UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ANDERSON CARTER,

                         Plaintiff,

       -v-

CITY OF NEW YORK, MS. REID, DEBORAH
ROBERSON, MS. BALLARD, MS. ETIENE,
RICH MILLER, JOHN DOE, JOHN DOE, and
JANE DOE, *in their individual and official
capacities*,

                        Defendants.

----------------------------------------------------------- X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/14

No. 13-cv-1839-RA

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Anderson Carter brings this action pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, et seq., against the City of New York and Bellevue Men's Shelter employees Yvonne Ballard, Jane Etienne, Eunice Reid, and an unidentified John Doe.[1] Before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion is granted.

## BACKGROUND

In December 2011, Carter resided at the New York City Department of Homeless Services' Bellevue Men's Shelter ("Bellevue") in Manhattan. (Am. Compl. 2.)[2] Carter alleges

---

[1] Carter also asserted claims against two employees of Renaissance Men's Shelter and an employee of FJC Security Services, which provides security for Renaissance (collectively "Renaissance Defendants"). As discussed below, Judge Brian Cogan of the Eastern District of New York, to whom this action was previously assigned, dismissed Carter's claims against these Defendants, and they are no longer parties to this action. (Dkt. 9.) Accordingly, the Court will not address the allegations against them.

[2] Citations to the Amended Complaint reflect the pagination assigned by the Court's Electronic Case Filing ("ECF") system.

that Defendant Eunice Reid denied him "access to mail and . . . the courts" and that "[t]he City of New York denied [him] basic liberties and [F]ourth [A]mendment violation on December 15-27." (Id.) He also alleges that on December 29, 2011, an employee at Bellevue, an unnamed John Doe Defendant, signed for a Federal Express ("FedEx") letter containing a $500 settlement check from a law group at New York Law School, which had been assisting him in an unrelated employment discrimination action. (Id. 2-3.) Carter contends that Yvonne Ballard and Jane Etienne, employees at Bellevue, refused "to check to see who signed" for the letter, which caused him "great hardship and stress," ultimately resulting in a "breakdown." (Id.) He further asserts that he suffers from Schizoaffective disorder and that he "explained to [Etienne] and [Ballard] that [he had] mental disabilities and . . . need[ed] help, and they refused and attempted to put [him] under further duress." (Id. 3.)

In addition to these allegations, Carter claims that insects and rodents infested his living quarters at Bellevue during his stay there, in or about December 2011 and January 2012, when he was transferred to Renaissance Men's Shelter.[3] Carter seeks $750,000 from the City and $500,000 from Reid. He also requests that the Court ensure that "the Defendants . . . adhere to the [Fourteenth] Amendment." (Id. 8-9.)

## PROCEDURAL HISTORY

On November 30, 2012, Carter commenced this action in the Eastern District of New York, asserting claims against the City of New York; the Department of Homeless Services; Bellevue Men's Shelter and one of its employees; and Renaissance Men's Shelter, two of its

---

[3] Although Carter asserts that he was "put in cruel and inhumane conditions by the City of New York December 6, 2011 [through] May 2012[,] which resulted in high insect and rodents all over [his] living quarters at the [Bellevue] Men[']s Shelter," he also alleges that he was transferred to Renaissance in "January 2012" and makes allegations against Renaissance that he claims occurred between January and March 2012, suggesting that his reference to May 2012 with respect to his stay at Bellevue was in error. (See Am. Compl. 3.)

employees, and an associated service provider (SCO Family Services) and security company (FJC Security Services) (collectively "Renaissance Defendants"). (Compl. 1.) On January 24, 2013, Judge Brian Cogan of the Eastern District of New York dismissed *sua sponte* Carter's § 1983 claims against the Renaissance Defendants on the ground that they are private actors not subject to liability under § 1983. He further dismissed Carter's § 1983 claims against the City, the Department of Homeless Services, and Bellevue Men's Shelter on the ground that Carter had failed to allege a policy or custom that led to any of the alleged violations. Lastly, he dismissed Carter's ADA claim on the ground that Carter had failed to allege that "he was denied the opportunity to participate in or benefit from defendants' services, or was discriminated against by defendants, because of his disabilities." Carter, 2013 WL 308685, at *3.

With leave of the Court, Carter amended his Complaint, raising similar claims against the City and employees of Bellevue, Renaissance, and FJC, and adding two new Bellevue employees (Yvonne Ballard and Jane Etienne), two John Does (an employee of Bellevue and an FJC guard), and a Jane Doe (an employee of Renaissance) as Defendants. (Am. Compl. 2-4.)

On March 18, 2014, Judge Cogan dismissed *sua sponte* Carter's claims against the remaining Renaissance Defendants and transferred the action to this Court pursuant to 28 U.S.C. § 1391. (Dkt. 9.) On September 26, 2013, Defendants filed the instant motion to dismiss the Amended Complaint. (Dkt. 28.)

## DISCUSSION

### A. Applicable Legal Standard

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint . . . . [and] draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). "This rule applies with particular force where

3

the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). A *pro se* complaint "must be construed liberally with special solicitude and interpreted to raise the strongest claims that it suggests. Nonetheless, a *pro se* complaint must state a plausible claim for relief." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotation marks and citation omitted).

### B. ADA Claim

Carter's ADA claim is based on his allegation that, even though he informed Etienne and Ballard of his Schizoeffective disorder, they refused to check who had signed for his FedEx letter and that he suffered a breakdown as a consequence. (Am. Compl. 3.)

"In order to establish a violation under the ADA, plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

As Judge Cogan explained, Carter's "claim that due to his disability, he 'could not cope with' the 'stress' of not receiving his mail on time is insufficient" because it "fails to allege facts to establish that he was denied the opportunity to participate in or benefit from defendants' services, or was discriminated against by defendants, because of his disabilities." Carter, 2013 WL 308685, at *3. Although it is true that in the Amended Complaint Carter alleges that he explained his mental impairment to Etienne and Ballard and requested help locating the individual who signed for his letter, he still fails to assert that "he was denied the opportunity to participate in or benefit from [Bellevue's] services . . . or [was] otherwise discriminated against . . . by reason of

4

[his] disabilit[y]." Henrietta D., 331 F.3d at 272. Moreover, his allegation that Ballard and Etienne "attempted to put [him] under further duress" is conclusory and "not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).

Accordingly, Carter's ADA claim is dismissed.[4]

### C. Section 1983 Claims

Liberally construing the Amended Complaint, Carter's § 1983 claims against the City and individual defendants appear to be that Reid, Etienne, Ballard and the John Doe Defendant interfered with his access to mail and the courts and deprived him of property without due process of law; that he was put in "cruel and inhumane conditions" because his living quarters were infested with insects and rodents; and that "[t]he City of New York denied [him] basic liberties and [F]ourth [A]mendment violation on December 15-27." (Am. Compl. 2.) He also alleges that the City "refused to put [Department of Homeless Services] police" at Renaissance. (Id. 5.)

#### 1. City of New York

As Judge Cogan explained, "in order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury, a direct causal connection between that policy or custom, and the deprivation of a constitutional right." Carter, 2013 WL 308685, at *3 (quoting Monell v. Dep't of Social Servs., 436 U.S. 658 (1978)). As with Carter's original Complaint, his Amended Complaint "cannot reasonably be interpreted as alleging facts sufficient to demonstrate that any alleged injury was caused by any policy or custom of the municipal defendant, the City of New York." Id.

---

[4] The ADA claim brought against Reid, Etienne, and Ballard in their individual capacities must be dismissed for the additional reason that "[t]he ADA does not provide for individual capacity suits against state or city officials." Alster v. Goord, 745 F. Supp. 2d 317, 337 (S.D.N.Y. 2010).

First, that two employees "refus[ed] to check to see who signed for a [F]ederal [E]xpress envelope . . . do[es] not suggest a policy or custom as required by Monell." Id. (first alteration in original) (internal quotations omitted).

Second, Carter's claim that his living quarters were infested with insects and rodents does not implicate the Constitution. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989). As a general matter, however, "[a]ccess to food and shelter is not a constitutional right, nor is there any government obligation to provide adequate housing." Richardson v. City of New York, 12 Civ. 2545 (WHP), 2013 WL 2124176, at *2 (S.D.N.Y. Apr. 17, 2013) (alteration in original) (quoting Reaves v. Dep't of Veterans Affairs, 08 Civ. 1624 (RJD), 2009 WL 35074 (RJD), at *3 (E.D.N.Y. Jan. 6, 2009)). Carter was not in custody, nor does he allege that the City restricted his freedom of movement in any way. Cf. Jacobs v. Ramirez, 400 F.3d 105, 107 (2d Cir. 2005) ("Having agreed to parole Jacobs to the home to which he sought to be paroled, the state assumed the very limited duty of ensuring that it did not *require* him to remain in a place that turned out, at least according to his allegations, to be uninhabitable."). Moreover, as the cases involving complaints about conditions in public housing demonstrate, a local agency's failure to remedy potentially hazardous living conditions does not amount to a substantive due process violation. Allen v. N.Y.C. Hous. Auth., 10 Civ. 168 (CM) (DF), 2012 WL 4794590, at *7 (S.D.N.Y. Sept. 11, 2012) (citing cases in which district courts have rejected Fourteenth Amendment claims against "state actors . . . accused of failing to remedy

6

mold conditions in public housing and . . . a public school" by distinguishing between "inaction" by the agency and the "actual creation of harm").[5]

Lastly, Carter's conclusory allegation that the City denied him "basic liberties and [F]ourth [A]mendment violation on December 15-27," (Am. Compl. 2), entirely fails to "satisfy the pleading standards set forth in Iqbal and Twombly," Nixon v. Blumenthal, 409 F. App'x 391, 393 (2d Cir. 2010). His claim that the City failed to put Department of Homeless Services police at Renaissance also fails, as "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney, 489 U.S. at 197.

Accordingly, Carter's § 1983 claims against the City are dismissed.

*2. Individual Defendants*

"To succeed on a § 1983 claim, a plaintiff must show that the defendants, acting under the color of state law, deprived him or her of a constitutional right." Walker v. Sankhi, 494 F. App'x 140, 142 (2d Cir. 2012).

Carter alleges that a John Doe employee of Bellevue signed for his FedEx letter and that Ballard and Etienne impeded his access to that letter by refusing to investigate who had signed for it. (Am. Compl. 2.)[6] Construing the Amended Complaint as a whole, it appears that Carter intended to raise claims for the denial of his right of access to the courts and to the free-flow of incoming and outgoing mail. The Court also construes the Amended Complaint to raise a claim for deprivation of property without due process of law.

---

[5] Additionally, "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Carter's claim regarding insects and rodents does not do so here.

[6] Although Carter alleges that Reid denied him "access to mail and . . . the courts" as well, (Am. Compl. 3), he does not offer any facts supporting Reid's involvement in the incident. See Williams v. Smith, 781 F.2d 319, 323 (2d Cir.1986) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). In any event, as discussed, the underlying allegations do not raise a claim under § 1983.

7

First, to state a claim for denial of the right of access to the courts, a plaintiff must allege "that a defendant caused 'actual injury,' *i.e.*, took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim." Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (alteration in original) (citations omitted) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). The only injury Carter alleges is the loss of a settlement check, which "does not constitute the frustration of Plaintiff's efforts to pursue a nonfrivolous claim, and therefore fails to satisfy the actual injury requirement." Bellezza v. Holland, 730 F. Supp. 2d 311, 315 (S.D.N.Y. 2010).

To the extent that Carter intended to raise a separate First Amendment mail-interference claim, this claim also fails. Access to mail claims are often litigated in the context of criminal, and sometimes civil, confinement, where courts have recognized a First Amendment right to the "free flow of incoming and outgoing mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment."); see also Ahlers v. Rabinowitz, 684 F.3d 53, 64 (2d Cir. 2012) (adapting the standard for analyzing censorship of mail in the prison context to the civil commitment context). Unlike prisoners, or civilly committed individuals, who are dependent on their custodians for access to the mail system, Carter was a shelter resident and not so constrained. In any event, Carter's allegation that he did not receive a single letter mailed to him at the shelter and that two employees refused to help him locate it falls far short of stating a First Amendment violation. See Davis, 320 F.3d at 351 ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); Dixie v. U.S. Postal Serv., 12 Civ. 112 (WL), 2012 WL 1455201, at * 1 (N.D. Ind. Apr. 25, 2012) ("While censorship of his mail based on its *content* could implicate the First Amendment, Dixie alleges only that some of his mail

8

was mishandled. 'The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services.'" (quoting Sandage v. Bd. of Commr's of Vanderburgh County, 548 F.3d 595, 596 (7th Cir. 2008)).

Lastly, the "[d]eprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." Dove v. City of New York, 99 Civ. 3020 (DC), 2000 WL 342682, at *2 (S.D.N.Y. Mar. 30, 2000). It is well recognized that "New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion." Dove, 2000 WL 342682, at *2; see Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987) (emphasizing that § 1983 should "not be made a vehicle for transforming mere civil tort claims into constitutional injuries"). Consequently, Carter cannot state a claim for deprivation of property under § 1983.

Accordingly, Carter's § 1983 claims against the individual defendants are dismissed.[7]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is granted in its entirety.

Leave to amend is denied with one exception: for the first time in the Amended Complaint, Carter alleges that his "basic liberties" and Fourth Amendment rights were violated between December 15, 2011 and December 27, 2011. (Am. Compl. 2.) As discussed, Carter provides no factual support for this allegation. Out of an abundance of caution because Carter is proceeding

---

[7] The Court need not address whether the facts alleged in the Amended Complaint may be sufficient to state cognizable state law claims; to the extent they do, the Court declines to exercise jurisdiction over them. See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims." (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

9

*pro se*, the Court will grant him limited leave to amend to add factual detail to this allegation if he can do so in good faith.

If Carter chooses to amend, he must do so within **thirty days** of the date of this Order. If he fails to submit a Second Amended Complaint within the time permitted and cannot show good cause to excuse such failure, all of his federal claims will be dismissed with prejudice. If he submits a Second Amended Complaint that includes any claims that go beyond scope of the permitted amendment, such claims will be dismissed.

The Clerk of Court is directed to close the case, subject to reopening if Plaintiff files a Second Amended Complaint within thirty days. The Clerk of Court is also requested to terminate the motion pending at docket number twenty-eight (28).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438 (1962).

SO ORDERED.

Dated:   September 30, 2014
         New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge